**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br>Jeffrey D. Wiley,<br>　　　　　　　　Debtor | Chapter 7<br>Case No. 16-10485 |
| Jeffrey D. Wiley,<br>　　　　　　　　Plaintiff<br>　v.<br>Wells Fargo Bank, N.A.,<br>　　　　　　　　Defendant | Adv. Proc. No. 16-1026 |

## **MEMORANDUM OF DECISION**

The parties disagree about whether two loans to the debtor resulted in debts that are excepted from discharge under 11 U.S.C. § 523(a)(8). Certain material facts are not in dispute. But summary judgment – sought here by Wells Fargo – is only appropriate if there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also* Fed. R. Bankr. P. 7056 (making Fed. R. Civ. P. 56 applicable in adversary proceedings). The summary judgment record does not establish that Wells Fargo is entitled to judgment as a matter of law. As a result, Wells Fargo's motion for summary judgment will be denied.

### I. UNDISPUTED FACTS

When viewed in the light most favorable to Mr. Wiley, the summary judgment record establishes the following undisputed facts. *See* Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 763 (1st Cir. 1994). Most of the facts are undisputed for at least two reasons: the debtor's

failure to controvert Wells Fargo's supported assertions of fact, *see* Fed. R. Civ. P. 56(e)(2); D. Me. LR 56(f), and the debtor's express recognition that there are no facts in dispute, *see* [AP Dkt. No. 49]. The Court has also taken judicial notice of its own docket; the parties' stipulated facts [AP Dkt. No. 36-1] ("Stip."); and several other facts that the parties asked the Court to notice [AP Dkt. No. 44]. *See* 10A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2723 (4th ed.) ("The doctrine of judicial notice applies to motions under Rule 56; thus the court may consider anything in support of or in opposition to summary judgment that it may judicially notice.") (footnotes omitted).

After the debtor graduated from high school, he went to the University of Maine at Orono, but did not obtain a degree from that institution. [Stip. ¶ 2.] In 2006 and 2007, the debtor attended a two-year certificate program in New Brunswick, New Jersey. [Stip. ¶ 3.] The certificate program consisted of ten weeks of classes from October through December 2006 and October through December 2007, and an internship at a country club in Scotch Plains, New Jersey during and in between those ten-week class sessions. Id. During each of the ten-week sessions, the debtor attended classes for approximately eight hours a day. [Stip. ¶ 12.] The debtor completed the program and received a certificate. [Stip. ¶ 4.] Since then, he has had several jobs, including his current job as an assistant golf course manager at a country club in New Hampshire. [Stip. ¶ 5.] The classes that the debtor took during the certificate program trained him for the jobs he has held at golf courses since he completed the program. [Stip. ¶ 13.]

When the debtor started attending the certificate program in 2006, it was offered by the Rutgers Professional Golf Management School (the "School") through the Cook College Office of Continuing Professional Education. [SMF ¶ 12 & Stip. Ex. E.] In 2007, the certificate program was offered by the School through the New Jersey Agricultural Experiment Station

("NJAES") Office of Continuing Professional Education. [Stip. ¶ 6.] While the debtor attended the certificate program, faculty at the School included professors and instructors from Rutgers University. [Stip. ¶ 11.] At that time, Rutgers University also offered a four-year turfgrass program leading to an undergraduate degree. [SMF ¶¶ 58-59, Stip. Ex. E at 10, & Stip. Ex. F at 10.] Rutgers University has been an accredited institution since at least 1921. [AP Dkt. No. 44.] When the debtor attended the School, and when he obtained the Loans (defined below), Rutgers University was accredited to grant postsecondary certificates for programs lasting more than one year, but less than two years. [SMF ¶ 18, Sleeper Aff. ¶ 3, & Sleeper Aff. Ex. A.] At that time, Rutgers University was eligible for aid under Title IV of the Higher Education Act of 1965. [SMF ¶ 20, Sleeper Aff. ¶¶ 4-5, & Sleeper Aff. Ex. B & C.] Neither the Rutgers Office of Continuing Professional Education nor the NJAES were separately accredited institutions when the debtor attended the certificate program. [Opp. SMF ¶ 6 & Reply SMF ¶ 6.] Traditional financial aid, like that obtained through FAFSA, was not available for the program, but other student loans were available. [SMF ¶ 61 & Stip. Ex. D.]

In August 2006, the debtor executed a Loan Request/Credit Agreement (the "First Agreement") evidencing a loan (the "First Loan") in the principal amount of $5,500.00 from Wachovia Bank of Delaware, N.A., to the debtor. [Stip. ¶ 14 & Stip. Ex. H.] In September 2007, the debtor executed a Loan Request/Credit Agreement (the "Second Agreement") evidencing a loan (the "Second Loan") in the principal amount of $12,000.00 from Wachovia. [Stip. ¶ 15 & Stip. Ex. I.] The debtor's obligations under the First Loan and the Second Loan (collectively, the "Loans") were guaranteed by The Education Resources Institute, Inc. ("TERI"), a nonprofit institution. [SMF ¶ 41, Stip. Ex. H at § L(10), & Stip. Ex. I at § L(10).]

The debtor used the proceeds of the First Loan to pay for tuition, books, and food expenses that he incurred to attend the certificate program from October 2006 through September 2007. [Stip. ¶ 17.] He used part of the proceeds of the Second Loan to pay for tuition, books, and food expenses that he incurred to attend the certificate program from October 2007 onward. [Stip. ¶ 18.] He also used part of the proceeds of the Second Loan to buy a 2008 Nissan Frontier to replace his prior vehicle, which had broken down. Id. The debtor bought the truck to transport himself to classes. Id. The School did not require him to own a vehicle, but "strongly recommended" car ownership for transportation to classes. [Id. & Stip. Ex. D.]

In March 2010, Wells Fargo acquired Wachovia's rights under the First Agreement and the Second Agreement (collectively, the "Agreements") by merger. [SMF ¶¶ 37-39, Stip. ¶ 16, & Herr Aff. ¶ 3.] The debtor last made a payment on the Loans in 2013. [Stip. ¶ 19.] The outstanding balance of the Loans is approximately $19,000.00. [SMF ¶ 51 & Wiley Dep. at 36.]

The debtor filed a chapter 7 petition in August 2016 and received a discharge three months later. [Dkt. No. 1 & 11.] In November 2016, the debtor filed an adversary complaint against Wells Fargo under Fed. R. Bankr. P. 4007, seeking a determination that the Loans are dischargeable. [AP Dkt. No. 1.] In the complaint, the debtor asserted that he did not use the Loans to pay for "qualified educational expenses," and used them to pay for an education at an institution that was not accredited. Id. Wells Fargo moved for summary judgment on the debtor's complaint or, alternatively, partial summary judgment on any of the factual or legal issues presented. [AP Dkt. No. 35.] After hearing oral arguments on the summary judgment motion, the Court took the motion under advisement. [AP Dkt. No. 48 & 49.]

## II. DISCUSSION

A discharge under 11 U.S.C. § 727 is broad, but not unlimited. Certain types of debts are not discharged under section 727. *See* 11 U.S.C. § 523(a). In general, 11 U.S.C. § 523(a)(8) excepts a student loan debt from discharge, unless repayment of the debt would impose an undue hardship on the debtor and the debtor's dependents. Specifically, section 523(a)(8) provides that a chapter 7 discharge does not discharge a debt:

> unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents, for –
>
> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

Id. The statute thus applies to four categories of debts:

> i.   educational loans (or educational benefit overpayments) made, insured, or guaranteed by a governmental unit;
> ii.  educational loans (or educational benefit overpayments) made under a program funded by a governmental unit or a nonprofit institution;
> iii. obligations to repay funds received as an educational benefit, scholarship, or stipend; and
> iv.  qualified education loans.

*See* id.; *see also* Inst. of Imaginal Studies v. Christoff (In re Christoff), 527 B.R. 624, 632 (B.A.P. 9th Cir. 2015) (quoting Benson v. Corbin (In re Corbin), 506 B.R. 287, 291 (Bankr. W.D. Wash. 2014)). In this proceeding, the debtor contends that the debts are dischargeable because they do not fall within the parameters of section 523(a)(8). Wells Fargo has a markedly

- 5 -

different view of the world, contending that the debts are excepted from discharge because they fit within three of the four categories enumerated above.[1]

Like all exceptions to discharge, section 523(a)(8) must be construed narrowly, *see* Razzaboni v. Schifano (In re Schifano), 378 F.3d 60, 66 (1st Cir. 2004), yet in a manner that gives effect to defined statutory terms and that accords undefined terms their ordinary meaning, *see* Field v. Mans, 157 F.3d 35, 43 (1st Cir. 1998).  Wells Fargo, as the party moving for summary judgment, bears the burden of demonstrating that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.  *See* In re Schifano, 378 F.3d at 66.  Summary judgment is precluded by a "genuine" dispute – where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" – and only by such dispute over a "material" fact – a fact "that might affect the outcome of the suit under the governing law[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

As the creditor, Wells Fargo bears the burden of showing that the debtor's obligations are of the type excepted from discharge under section 523(a)(8).  *See* Brown v. Educ. Credit Mgmt. Corp., No. 2:17-cv-84-NT, 2017 WL 6337182, at *2 (D. Me. Dec. 12, 2017).  Because the subsections of section 523(a)(8) are written disjunctively, a debt is not dischargeable (in the absence of undue hardship) if it falls within any one of the statute's subsections.  Kashikar v. Turnstile Capital Mgmt., LLC (In re Kashikar), 567 B.R. 160, 167 (B.A.P. 9th Cir. 2017).  Wells Fargo attempts to fit the debts into all three subsections of section 523(a)(8).  Specifically, Wells Fargo argues that:

    i.    the debts arise out of "educational loans" that were made under a program funded by a nonprofit institution, for purposes of section 523(a)(8)(A)(i);
    ii.   the debts arise out of an "obligation to repay funds received as an educational benefit[,]" for purposes of section 523(a)(8)(A)(ii); and

---

[1] This is not an undue hardship case; the debtor does not contend that repayment of his debts to Wells Fargo would impose an undue hardship on him and his dependents.

- 6 -

> iii.    the debts arise out of "educational loan[s]" that are also "qualified education loan[s]" as defined in the Internal Revenue Code, for purposes of section 523(a)(8)(B).

Each of these arguments is addressed in turn below.

### A.    Educational Loans Under Section 523(a)(8)(A)(i)

Wells Fargo does not argue that the Loans were "educational loans" or "educational benefit overpayments" made, insured, or guaranteed by a *governmental unit* for purposes of section 523(a)(8)(A)(i). To fall within the remaining provision of section 523(a)(8)(A)(i), the Loans must satisfy three distinct requirements. First, the Loans must be "educational loan[s]" or "educational benefit overpayment[s]." 11 U.S.C. § 523(a)(8)(A)(i). Second, the loans or overpayments must have been made under a "program." Id.; *see* Educ. Res. Inst., Inc. v. Hammarstrom (In re Hammarstrom), 95 B.R. 160, 165 (Bankr. N.D. Cal. 1989). Third, the program must have been funded, in whole or in part, by a governmental unit or a nonprofit institution. 11 U.S.C. § 523(a)(8)(A)(i); *see* In re Hammarstrom, 95 B.R. at 165. The requirement of "funding" applies to programs, not to specific loans. *See, e.g.,* Kidd v. Student Loan Xpress, Inc. (In re Kidd), 458 B.R. 612, 620 (Bankr. N.D. Ga. 2011); Educ. Res. Inst., Inc. v. Taratuska (In re Taratuska), No. 07-11938-RCL, 2008 WL 4826279, at *3 (D. Mass. Aug. 25, 2008) (interpreting pre-BAPCPA version of section 523(a)(8), which contained the same language at issue here); Hemar Serv. Corp. of Am. v. Pilcher (In re Pilcher), 149 B.R. 595, 598 (B.A.P. 9th Cir. 1993) (same); In re Hammarstrom, 95 B.R. at 165 (same).

Several material facts are not disputed. The Loans at issue constitute "loans" within the meaning of section 523(a)(8)(A)(i). The debtor took out the Loans for the purpose of attending the certificate program. The debtor used the proceeds of the First Loan to attend the certificate program. And, the debtor used part of the proceeds of the Second Loan to attend the certificate

- 7 -

program, and the remainder of the proceeds to buy a truck to transport himself to certificate program classes.

Despite the existence of several undisputed material facts, summary judgment cannot be granted under section 523(a)(8)(A)(i) because there is no evidence that the Loans were made under a program funded by a nonprofit institution. Wells Fargo has not established that the Loans were made under a program funded by a nonprofit institution. It has simply asserted that the Loans themselves were guaranteed by the nonprofit institution, TERI. Wells Fargo's assertions do not identify the program under which the Loans were extended, address the relationship between Wachovia and TERI, or otherwise show that TERI funded the program under which the Loans were made. *Cf.* O'Brien v. First Marblehead Educ. Res., Inc. (In re O'Brien), 419 F.3d 104, 105-06 (2d Cir. 2005) (concluding that a student loan was excepted from discharge, based on trial court's undisputed findings that a nonprofit institution had guaranteed the loan *and* funded the program under which the loan was disbursed); In re Hammarstrom, 95 B.R. at 165-66 (concluding that student loan was made under a program funded by a nonprofit institution, where nonprofit and lender had entered into an agreement that required nonprofit to buy lender's student loans). The existence of a guarantee from a nonprofit institution is not, by itself, enough. These gaps in Wells Fargo's assertions doom its summary judgment motion as it relates to section 523(a)(8)(A)(i).

There is some information in the record that indicates that the Loans *may* have been extended under a program funded by a nonprofit institution. The signature page of each of the Agreements contains a text box entitled "Loan Program Information" that identifies each of the Loans as a "TERI Continuing Education Loan." [Stip. Ex. H & Stip. Ex. I.] The First Agreement also contains the following preprinted acknowledgement by the debtor:

- 8 -

> I understand that this loan is made under a program funded in part by a non-profit organization and as such is generally not dischargeable in bankruptcy pursuant to Section 523(a)(8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit institution.

[Stip. Ex. H at § L(10).] The Second Agreement likewise contains the following preprinted acknowledgement:

> I understand and agree that this loan is an education loan and certify that it will be used only for costs of attendance at the School. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523(a)(8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full.

[Stip. Ex. I at § L(10).] On summary judgment, these indications are not enough to carry the day. These preprinted portions of the Agreements do not mandate an inference that the Loans were, in fact, made under a program funded by a nonprofit institution. *See* In re Varrasso, 37 F.3d at 763 ("[A]ll reasonable inferences from the facts must be drawn in the manner most favorable to the nonmovant. This means, of course, that summary judgment is inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record.") (citations omitted). Wells Fargo's request for summary judgment under section 523(a)(8)(A)(i) must therefore be denied.[2]

---

[2] The parties appear to agree that the First Loan is an "educational loan" for purposes of section 523(a)(8). The Second Loan appears to create some friction, as some of the proceeds were used to buy a vehicle. On the present record, the Court does not decide whether the debtor's actual use of the proceeds of the Second Loan rendered a portion of that loan something other than an "educational loan" within the meaning of section 523(a)(8).

- 9 -

**B.      Obligation to Repay Funds Received Under Section 523(a)(8)(A)(ii)**

Wells Fargo next argues that the Loans evidence "obligation[s] to repay funds received as an educational benefit[,]" excepted from discharge under section 523(a)(8)(A)(ii). Section 523(a)(8)(A)(ii) excepts from discharge "an obligation to repay funds received as an educational benefit, scholarship, or stipend." 11 U.S.C. § 523(a)(8)(A)(ii). Under the "educational benefit" provision of this statute (i) funds must have been received; (ii) the funds must have been received as an educational benefit; and (iii) there must be an obligation to repay the funds. Id.

In determining whether the Loans constitute an "obligation to repay funds received as an educational benefit" under section 523(a)(8)(A)(ii), the Court is informed by the differences between the terminology found in each subsection of section 523(a)(8). The phrase "obligation to repay funds received as an educational benefit" in section 523(a)(8)(A)(ii) is distinct from the reference to "an educational . . . loan" found in section 523(a)(8)(A)(i) and from the reference to "any other educational loan" found in section 523(a)(8)(B). Based on the organization of the statute and the distinct terminology employed in each subsection, the Court presumes that "Congress intended each subsection to have a distinct function and to target different kinds of debts." In re Christoff, 527 B.R. at 634 (footnote omitted). As such, the Court is unpersuaded that Congress intended a "loan" to qualify as an "obligation to repay funds received as an educational benefit" within the meaning of section 523(a)(8)(A)(ii). *See* Essangui v. SLF V-2015 Trust (In re Essangui), 573 B.R. 614, 622 (Bankr. D. Md. 2017) ("Although common usage of the word 'funds' could . . . include the proceeds of a loan, the structure of section 523(a)(8) suggests a more limited and tailored definition.").

The Court's construction of section 523(a)(8)(A)(ii) is also guided by the principle that an interpretation yielding statutory surplusage should be avoided if a competing interpretation

- 10 -

would give effect "to every clause and word of a statute." *See* Marx v. Gen. Revenue Corp., 568 U.S. 371, 385 (2013) (quotation marks omitted). If a "loan" qualified as an "obligation to repay funds received as an educational benefit," section 523(a)(8)(A)(i) and 523(a)(8)(B) would be entirely superfluous. *See* In re Essangui, 573 B.R. at 623-24; Campbell v. Citibank, N.A. (In re Campbell), 547 B.R. 49, 54-55 (Bankr. E.D.N.Y. 2016); Nunez v. Key Educ. Res./GLESI (In re Nunez), 527 B.R. 410, 415 (Bankr. D. Or. 2015). Why would Congress exclude qualified education loans from discharge under section 523(a)(8)(B) if all educational loans were excepted from discharge under section 523(a)(8)(A)(ii)? And, why would Congress exclude government-backed loans from discharge under section 523(a)(8)(A)(i) if all educational loans were excepted under section 523(a)(8)(A)(ii)? Wells Fargo has no compelling answers for these questions.

Though Wells Fargo cites cases supporting its theory that a "loan" may be excepted from discharge under section 523(a)(8)(A)(ii), those cases are not persuasive. For example, Maas v. Northstar Education Finance, Inc. (In re Maas), 497 B.R. 863 (Bankr. W.D. Mich. 2013) states that "[s]ections 523(a)(8)(A)(i) and (ii) both apply to 'educational benefit' loans[.]" Id. at 869. In fact, nothing in the plain language of section 523(a)(8)(A)(ii) makes that subsection applicable to loans. Wells Fargo also cites Plumbers Joint Apprenticeship and Journeyman Training Committee v. Rosen (In re Rosen), 179 B.R. 935 (Bankr. D. Or. 1995). But, that case does not stand for the proposition that a loan constitutes an obligation to repay funds received as an educational benefit. *See* id. at 939. Instead, Rosen determined that the debtor's obligation to repay a scholarship loan was an educational loan made under a program funded by a nonprofit institution. Id. at 939-40.

The phrase "educational benefit" is not defined by the Bankruptcy Code. In section 523(a)(8)(A)(ii), the phrase appears in a list next to the terms "scholarship" and "stipend," which

both refer to conditional grants that do not invariably entail a fixed repayment obligation. *See* In re Campbell, 547 B.R. at 55. Because the term "loan" appears elsewhere in the statute, the Court presumes that each of the terms listed in section 523(a)(8)(A)(ii) refer to alternative obligations. "In light of the many programs . . . which provide cash benefits to students, like veteran's educational benefits, stipends for teaching assignments, and cash scholarships[,]" Congress must have envisioned section 523(a)(8)(A)(ii) capturing "obligations other than those arising from traditional student loans." In re Christoff, 527 B.R. at 634 n.9. *Accord* In re Meyer, No. 15-13193, 2016 WL 3251622, at *2 (Bankr. N.D. Ohio June 6, 2016) ("[S]ubdivision (a)(8)(A)(ii) of section 523 refers to educational debts, other than loans, such as conditional grants and stipends that are not generally required to be repaid."). Because the debts at issue here arise out of loans, they are not excepted from discharge under section 523(a)(8)(A)(ii). Wells Fargo's request for relief under section 523(a)(8)(A)(ii) is thus foreclosed.

**C.     Qualified Education Loans Under Section 523(a)(8)(B)**

Finally, Wells Fargo contends that the Loans are excepted from discharge under section 523(a)(8)(B), which makes nondischargeable "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]" 11 U.S.C. § 523(a)(8)(B). The first clause requires that the obligation be an "educational loan[.]" Id. The second clause requires that such loan constitute a "qualified education loan[.]" Id. The third clause states that the loan must have been incurred "by a debtor who is an individual[.]" Id. There is no dispute that the debtor, an individual, incurred the obligations. But, the summary judgment record does not contain the information

needed to determine whether the Loans constitute "qualified education loans" within the meaning of section 523(a)(8)(B).[3]

Unlike the other categories of debts within section 523(a)(8), the Code contains some guidance as to the meaning of "qualified education loans." Specifically, section 523(a)(8)(B) refers to section 221(d)(1) of the Internal Revenue Code (the "IRC") for the definition of a "qualified education loan." 11 U.S.C. § 523(a)(8)(B). Section 221(d)(1) defines the term "qualified education loan" to mean (in relevant part):

> any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses --
> (A) which are incurred on behalf of the taxpayer, the taxpayer's spouse, or any dependent of the taxpayer as of the time the indebtedness was incurred,
> (B) which are paid or incurred within a reasonable period of time before or after the indebtedness is incurred, and
> (C) which are attributable to education furnished during a period during which the recipient was an eligible student.

26 U.S.C. § 221(d)(1). This definition requires (i) a "taxpayer" to incur a debt; (ii) the taxpayer or the taxpayer's spouse or dependent to incur "qualified higher education expenses"; (iii) the debt to be "incurred . . . solely" to pay for those "qualified higher education expenses"; (iv) the "qualified higher education expenses" to be paid or incurred in close temporal proximity to the incursion of the debt; and (v) the "qualified higher education expenses" to be attributable to education furnished while the recipient was an "eligible student." Id.

In parsing this definition, the Court has considered whether the record establishes each of the foregoing elements. The record is not sufficiently developed to permit a conclusion that the Loans do or do not constitute "qualified education loans." At this juncture, the Court will not belabor each element of a "qualified education loan" and the byzantine definitions embedded

---

[3] For this reason, there is no need to determine whether all or part of the Second Loan qualifies as an "educational loan" for purposes of section 523(a)(8).

- 13 -

therein. Instead, the Court will provide the parties with examples of the numerous gaps in the record as it relates to section 523(a)(8)(B).

First, the record does not establish that the debtor was a taxpayer when he took out the Loans. *See* 26 U.S.C. § 7701(a)(14) (defining a "taxpayer" as "any person subject to any internal revenue tax"). Though one court has suggested that a person's status as a taxpayer may "almost" be inferred from the fact of U.S. citizenship, *see* Doyle v. Creeger (In re Creeger), AP No. 15-3023, 2016 WL 3049972, at *12 (Bankr. N.D. Ohio May 20, 2016), neither party has pointed to any evidence in the record establishing the debtor's citizenship, and even if that fact had been established, the Court would be constrained to draw any reasonable inferences in favor of the debtor. There is no evidence in the record that the debtor filed federal tax returns or paid federal taxes in 2006 or 2007. Without such evidence, and without the benefit of any arguments from either party as to whether the debtor was a taxpayer at the relevant time, the Court cannot at this juncture conclude that the debtor was a taxpayer when he took out the Loans.

Second, it is not clear whether the Loans were "incurred . . . solely to pay qualified higher education expenses" within the meaning of section 221(d)(1) of the IRC. The IRC defines "qualified higher education expenses" as the "cost of attendance (as defined in . . . 20 U.S.C. 1087ll, as in effect on the day before . . . the enactment of the Taxpayer Relief Act of 1997) at an eligible educational institution" less certain deductions. 26 U.S.C. § 221(d)(2). Here, Wells Fargo has not established that the debtor incurred the Loans solely to pay for the "cost of attendance." *See* 20 U.S.C. § 1087ll(1)-(3) (1997) (defining "cost of attendance" to include tuition and fees, and certain allowances as determined by the institution); *see also* 26 C.F.R. § 1.221-1(e)(4) Example 6 (interpreting section 221 of the IRC and suggesting that if an individual incurs debt, in part to pay for "qualified higher education expenses" and in part for some other

- 14 -

purpose, the debt will not be a "qualified education loan"). Wells Fargo has not pointed to evidence establishing the amount that students in the certificate program were charged for tuition and fees, and there is no evidence in the record that goes to the institutional determinations required under the applicable statutes. *See* Noland v. Iowa Student Loan Liquidity Corp. (In re Noland), AP No. 09-8048-TJM, 2010 WL 1416788, at *4 (Bankr. D. Neb. Mar. 30, 2010) (denying summary judgment for lack of evidence of the institutional determinations that drive the "cost of attendance").[4]

Whether the School was an "eligible educational institution" is also unclear. *See* 26 U.S.C. § 221(d)(2) (defining "eligible educational institution" by reference to section 25A(f)(2) of the IRC); 26 U.S.C. § 25A(f)(2) (defining such institution as one "which is described in . . . 20 U.S.C. 1088 . . . as in effect on the date of the enactment" of section 25A(f)(2) of the IRC, and "which is eligible to participate in a program under title IV" of the Higher Education Act of 1965); *see also* Pub. L. 102-325, § 481(a), 106 Stat. 448 (1992) (defining an "institution of higher education" to include a "proprietary institution of higher education"); Pub. L. 102-325, § 481(b), 106 Stat. 448 (1992) (defining a "proprietary institution of higher education" to include a school that, among other things, offers an "eligible program of training to prepare students for gainful employment in a recognized occupation"; is accredited; and derives at least 15 percent of its revenues from sources "that are not derived from funds provided under this title"). In this proceeding, Wells Fargo has not met its burden of showing that the School was an "eligible educational institution." As described in more detail below, the summary judgment record does not establish whether the School was accredited, whether it was eligible to participate in a

---

[4] The debtor has asserted that when he attended the certificate program, the attendees were considered "less than 'half-time' students." [Opp. SMF ¶ 17.] Wells Fargo has asked the Court to strike this assertion as lacking foundation. [Reply SMF ¶ 17.] That request is granted. *See* Fed. R. Evid. 602.

program under Title IV, whether it offered an "eligible program of training to prepare students for gainful employment in a recognized occupation[,]" or whether it met the 15 percent revenue requirement set forth in the definition of a "proprietary institution of higher education." *See* Pub. L. 102-325, § 481(b), 106 Stat. 448 (1992).

Wells Fargo has asserted that, when the debtor attended the certificate program, Cook College and the NJAES were each "part of Rutgers University." [SMF ¶¶ 13, 15.] In support of these assertions, Wells Fargo has directed the Court to certain provisions of New Jersey law. *See* Berrios-Romero v. Estado Libre Asociado de P.R., 641 F.3d 24, 27 (1st Cir. 2011) (explaining that a court "may take judicial notice of law at any time"). The cited New Jersey statutes indicate that (i) Cook College was part of Rutgers University in 1985; (ii) the NJAES was part of Rutgers University in 1967, 1985, and 2010; (iii) the State of New Jersey designated Rutgers University to receive the benefits of certain acts of Congress (not including the Higher Education Act of 1965); and (iv) Rutgers University means and includes "all departments, colleges, schools, centers, branches, educational and other units and extensions thereof" – including the NJAES – for certain purposes of the New Jersey statutes. *See* N.J. Rev. Stat. §§ 18A:64J-10, 18A-64J-37, 18A:65-2, 18A:65-3, 18A:65-10, 18A:65-46, 18A:65-49, 18A:65-51, 58:10A-64. These statutes do not establish that Cook College or the NJAES were part of Rutgers University for purposes of accreditation and participation in Title IV programs.

By linking section 523(a)(8)(B) to section 221 of the IRC, Congress "ensured that the credit extended was for purposes of attending an institution that is eligible to offer programs under Title IV of the Higher Education Act of 1965." In re Essangui, 573 B.R. at 625. "To be eligible to receive Title IV funds, a school must enter into a program participation agreement with the Department of Education." Urquilla-Diaz v. Kaplan Univ., 780 F.3d 1039,

- 16 -

1043 (11th Cir. 2015). Schools that are eligible to offer programs under Title IV are identified by the Federal School Code List. *See* Decena v. Citizens Bank (In re Decena), 549 B.R. 11, 21 (Bankr. E.D.N.Y. 2016), *reversed in part on other grounds by* Citizens Bank v. Decena, 562 B.R. 202 (E.D.N.Y. 2016); *see also* In re Nunez, 527 B.R. at 416. In this proceeding, there is no dispute that Rutgers University was on the Federal School Code List in 2006 and 2007, while the debtor was attending the certificate program, but neither the Rutgers Office of Continuing Professional Education nor the NJAES were listed on the School Code at that time. It is also undisputed that the School did not offer certificate program students traditional student loans, like those available through FAFSA. The issue, then, boils down to the same question identified above. The issue is whether the School was separate from Rutgers University for the purposes of Title IV eligibility and participation when the debtor attended the certificate program. The record does not contain enough information for the Court to make an undisputed finding about Title IV eligibility.[5]

The record also fails to reveal whether the School offered an "eligible program of training to prepare students for gainful employment in a recognized occupation." *See* Pub. L. 102-325, § 481(b), 106 Stat. 448 (1992); *see also* Ass'n of Private Sector Colls. and Univs v. Duncan, 640 Fed. App'x 5, 5 (D.C. Cir. 2016) (discussing the "debt metrics" that qualify a program as one preparing students for "gainful employment" under 20 U.S.C. § 1088).[6] The record is,

---

[5] The debtor has asserted that, when he attended the certificate program, neither Cook College nor the Office of Continuing Professional Education offered Title IV loans. [Opp. SMF ¶ 5.] Wells Fargo has asked the Court to strike that assertion, for lack of foundation, under D. Me. LR 56(e). [Reply SMF ¶ 5.] The Court agrees that the affidavit to which this assertion refers does not contain the requisite foundation for this fact. *See* Fed. R. Evid. 602. Therefore, Wells Fargo's request is granted.

[6] The debtor has made several assertions that, in his view, push the certificate program outside of the definition of an "eligible program." *See, e.g.,* [Opp. SMF ¶¶ 11-14]. Wells Fargo has urged the Court to strike these assertions. *See, e.g.,* [Reply SMF ¶¶ 11-14]. Because the record suffers from other

additionally, devoid of any evidence that would go to the 15 percent revenue requirement that must be met for an institution to qualify as a "proprietary institution of higher education" under Pub. L. 102-325, § 481(b), 106 Stat. 448 (1992).

Finally, the summary judgment record does not reveal whether the debtor was an "eligible student" when he incurred the Loans. *See* 11 U.S.C. § 523(a)(8)(B) (referencing section 221(d)(1) of the IRC); 26 U.S.C. § 221(d)(1) (defining "qualified education loan" to mean indebtedness incurred to pay for expenses attributable to education furnished to an "eligible student"); 26 U.S.C. § 221(d)(3) (defining "eligible student" by reference to section 25A(b)(3) of the IRC); 26 U.S.C. § 25A(b)(3) (defining "eligible student" by reference to "20 U.S.C. 1091(a)(1) . . . as in effect on the date of the enactment of" section 25A(b)(3) of the IRC); *see also* 20 U.S.C. § 1091(a)(1) (effective Sept. 29, 1996) (restricting eligibility for certain grants and loans by a set of conditions, subject to exceptions). The definition of "eligible student" contains two exceptions, one found in 20 U.S.C. § 1091(b)(3) which provides that that:

> A student who --
>   (A) is carrying at least one-half the normal full-time work load for the course of study that the student is pursuing, as determined by an eligible institution, and
>   (B) is enrolled in a course of study necessary for enrollment in a program leading to a degree or certificate,
> shall be, notwithstanding paragraph (1) of subsection (a) of this section, eligible to apply for loans under part B or C of this subchapter. The eligibility described in this paragraph shall be restricted to one 12-month period.

20 U.S.C. § 1091(b)(3) (effective Sept. 29, 1996).[7] It appears that the debtor may fit within this exception, but it is unclear whether the Loans fell within the statutory 12-month eligibility period.

---

deficiencies that prevent a determination that the School was (or was not) an "eligible educational institution," the Court will neither grant nor deny the requests to strike at this time.

[7] The other exception, found in 20 U.S.C. § 1091(b)(4), is not applicable here.

Wells Fargo correctly identifies the issues under section 523(a)(8)(B) as "far more complicated" than the issues raised by the application of the rest of section 523(a)(8) to the facts of this case. The statutory definitions are dense and laden with defined terms that send the reader searching for meaning off in other directions. The preceding discussion is not intended to be a comprehensive roadmap for resolution of the parties' disputes under section 523(a)(8)(B). It is intended to demonstrate why summary judgment is not appropriate on this issue on this record.

### III.  CONCLUSION

For the reasons described above, Wells Fargo's summary judgment motion will be denied. A separate order will issue.

Dated:  December 21, 2017

Michael A. Fagone
United States Bankruptcy Judge
District of Maine